Lasater *v.* Gulf Refining Co. *et al.*

(*Nashville*, December Term, 1934.)

Opinion filed Jan. 12, 1935.

Solon L. Robinson, of Pikeville, for appellant.

Byron Pope and Joe Minton, both of Dunlap, for appellees.

Mr. Justice Cook delivered the opinion of the Court.

September 27, 1929, W. H. Clack and wife leased a corner lot in Dunlap, 50 by 60 feet, to L. M. Lasater for a term of ten years, at an annual rental of $60. Lasater erected a filling station on the lot and subleased it to the Gulf Refining Company.

It was stated in the lease to Lasater that it was made subject to the rights of the holder of any present or future mortgage. At that time Clack owed $1,000 to the Sequatchie County Bank, which was secured by a deed of trust to J. H. Heard, trustee, dated November 13, 1928. The deed of trust included about 6 acres, described in two tracts, the first known as the Rankin house property and the second as part of the Rankin estate. A plat with the record shows that both tracts lie within the block bounded by Cherry street, Coop's creek, Spring street, and Main street in the town of Dunlap, and that the 50 by 60 foot filling station lot is on the corner of Cherry and Main streets.

March 9, 1933, W. H. Clack executed a deed purporting to convey an estate in fee to the entire block to R. E. Standefer, G. A. Standefer, J. H. Heard, and J. B. Johnson. The deed contains a recital that the grantees are sureties on Clack's bond as clerk and master and liable for any shortage found to exist. And this, together with the assumption by the grantees of Clack's note of $900, dated August 13, 1932, payable to Sequatchie County Bank, secured by the deed of trust to J. H. Heard, Trustee, constituted the consideration for the property conveyed.

The defendants, Clack's grantees under the foregoing deed, defaulted upon their obligation to the bank, and J. H. Heard, trustee, under the deed of trust given by Clack to secure the bank, advertised the property for sale

as a whole. It was sold and bid in, so the conveyance of J. H. Heard, trustee, recites, by J. B. Johnson, Dr. R. E. Standefer, and George Standefer for $2,000, and it is further stated in the trustee's deed to the purchasers that "they being owners of said land they only paid the sum of $965, it being the amount due the bank and costs of sale."

After the trustee's conveyance, the purchasers at the trustee's sale notified the Gulf Refining Company that they had acquired the lease by their purchase under the deed of trust and made demand for the rents. Upon that the sublessee suspended payment of monthly rents to Lasater, who then filed the bill to enjoin the purchasers from interfering with his collection of rents from the Gulf Refining Company and for a decree declaratory of his superior right as lessee to possession of the lot and improvements covered by the lease from Clack.

The chancellor found that the grantees in the deed from Clack and wife March 9, 1933, assumed and promised to pay the debt of $900 secured by the mortgage to the bank, but that they failed to pay it; that there was no collusion between the grantees and the beneficiaries under the mortgage; that the sale at which defendants became purchasers was made in good faith at the price of $2,000, and they, being owners under the conveyance of Clack and wife, were entitled to the surplus after paying the $965 to the trustee. He held that the title of the purchasers at the trustee's sale related to Clack's deed of trust to J. H. Heard November 13, 1928.

The original bill was dismissed, and under defendant's cross-bill the chancellor decreed that they were owners of the fee and entitled to immediate possession of the leased premises.

■ Complainant appealed, and insists that the chancellor erred because by the deed of Johnson and others from Clack they assumed the mortgage debt and could not as purchasers at the trustee's sale, brought about through their own default, avoid the lease which was upon the property when they took the title in fee.

The defendants do not occupy the vantage ground of third parties, whose title by purchase at a trustee's sale relates to the date of the deed of trust and is superior to subsequent rights and equities. The purchasers from Clack, among them J. H. Heard, trustee, assumed and agreed to pay the bank's debt. That was part of the consideration set forth in the deed to them. They became the principal debtors to the bank. *Title Guaranty & Trust Co.* v. *Bushnell*, 143 Tenn., 681, 228 S. W., 699, 12 A. L. R., 1512; *O'Conner* v. *O'Conner*, 88 Tenn., 76, 12 S. W., 447, 7 L. R. A., 33.

When the defendants took the deed from Clack, his lease to Lasater covering only 50 by 60 feet of the 6-acre lot was recorded, and the leased premises were occupied as a filling station. The $900 debt assumed by the grantees in the deed from Clack was the only incumbrance prior to the Lasater lease. By their transaction with Clack, the grantees became legally and equitably bound to discharge the mortgage debt to the bank.

The sale by the trustee of the 6-acre block as a whole was brought about as result of the omission of duty that rested upon the defendants and J. H. Heard, all grantees from Clack, and they cannot profit by their own delinquency. It must be regarded in equity that Heard, trustee, sold the property and the defendants bought it at the trustee's sale subject to the lease known

by them to exist when they took the title in fee from Clack. 3 Jones on Mortgages, sec. 2429.

Facts sufficient to estop defendants from asserting the contrary are shown in the bill, and it was not necessary to specially say that these facts operated as an estoppel. *Maryland Casualty Co.* v. *McTyier*, 150 Tenn., 691, 266 S. W., 767, 48 A. L. R., 1168.

For the reasons stated, the decree of the chancellor is reversed, and the cause remanded.